IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION M. JOHNSON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 24-CV-2170 |
| CPL GUTHRIE, *et al.*,<br>    Defendants. | :<br>:<br>: |

**MEMORANDUM**

**KENNEY, J.**                                                                                                         **AUGUST 12, 2024**

*Pro se* Plaintiff Dion M. Johnson, currently incarcerated at SCI Houtzdale, filed a Complaint alleging claims related to the conditions of his confinement at Chester County Prison, where he was formerly incarcerated. Johnson seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Johnson leave to proceed *in forma pauperis*, but will dismiss his Complaint upon screening.

**I.    FACTUAL ALLEGATIONS**

Johnson names "CPL Guthrie" as a Defendant in this action, alleging that Guthrie is a corrections officer who "handles moves" for the cell block at Chester County Prison where Johnson was housed. ECF No. 1 at 2, 4. Johnson also names other unknown defendants in this action, providing "et al." as the "name" for Defendant No. 2:

```
Defendant No. 2
    Name                  ET AL
    Job or Title (if known)
    Shield Number
    Employer              CHESTER COSNTY PRISON
    Address               501 S. WAWASET RD
                          W. CHESTER    PA    19382
                          City          State  Zip Code
                          ☑ Individual capacity  ☑ Official capacity
```

*Id.* at 2.

On September 28, 2023, Guthrie and perhaps other unknown correctional officers assigned Johnson to a cell that was "unsanitary," "filthy," and "smelly" and was deemed "out of commission" because its sink and toilet were broken. *Id.* at 4-5. According to Johnson, the cell had been deemed out of commission for weeks, and was labeled on the inmate board as such. *Id.* at 4, 16. Once placed in the cell, Johnson had to mop up standing water in the cell that had leaked from the toilet with the assistance of another inmate multiple times a day in order to combat the smell of feces. *Id.* at 3, 5. Additionally, because the toilet in his cell was broken, he had to use a restroom on the other side of the cell block. *Id.* at 5.

Johnson alleges that he was purposely placed in that cell by Guthrie even though Guthrie knew that the cell was out of commission. *Id.* at 3. He specifically alleges that Guthrie acted with "malicious" intent, as Guthrie "knew the cell toilet didn't work and leaked on the floor but still placed [him] in there." *Id.* After notifying another corrections officer of the problems with his cell, Johnson was told that there was a work order pending for the repairs. *Id.* at 8. After three days with no improvement, the water in his cell was shut off entirely. *Id.* at 5.

On October 2, 2023, Johnson filed a written grievance in which he complained that "the sink runs all the time and the toilet leaks as well," and that he had "a mop under the sink to keep the water from standing on the floor around the toilet." *Id.* at 15. After Johnson filed the grievance, the leak was fixed, although he never received a written response to his grievance. *Id.* at 5-7, 13-14. On October 3, 2023, Johnson was transferred to another prison.[1] *Id.* at 5.

---

[1] Although it is unclear when exactly Johnson was transferred to another prison, Johnson states in his Complaint that all of the events described in the Complaint took place between September 28, 2023 and October 3, 2023. ECF No. 1 at 5. The Court therefore assumes that he was transferred on October 3, 2023, but Johnson is free to clarify the date of his transfer in an amended complaint, should he choose to file one.

Johnson does not claim to have suffered any physical injuries resulting from his placement in the cell. *Id.* at 5. Rather, he states that he was "deprived of basic needs," which led to "humiliation" and injuries to his dignity that were "mentally harmful." *Id.* at 5, 16. Based on these allegations, Johnson asserts constitutional claims under 42 U.S.C. § 1983. *Id.* at 3. He seeks damages of $1,500 from Guthrie and $1,500 "per individual involved that allowed the move [to the cell] to take place." *Id.*

## II.   STANDARD OF REVIEW

The Court grants Johnson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, the Court must review Johnson's Complaint and dismiss it if it fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted); *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (explaining that 28 U.S.C. § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (citation omitted).

"A document filed *pro se* is to be liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). Nevertheless, *pro se* litigants "must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

**III.   DISCUSSION**

Johnson brings claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). For the following reasons, Johnson's claims will be dismissed without prejudice, and he will be granted leave to file an amended complaint.

### A.  Johnson fails to state an Eighth Amendment claim as to Defendant Guthrie.[2]

To state a viable Eighth Amendment claim against prison officials, Johnson must allege "(1) [] an 'objectively, sufficiently serious' deprivation and (2) that the officials being sued had 'sufficiently culpable' states of mind." *Ridgeway v. Guyton*, 663 F. App'x 203, 205 (3d Cir. 2016) (citing *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001), *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the first prong—deemed the "objective" element—the deprivation must

---

[2]   Although Johnson was incarcerated at Chester County Prison, which also houses pretrial detainees, the Eighth Amendment applies to his claims because he was a convicted and sentenced state prisoner at the time of this incident. *See Commonwealth v. Johnson*, No. CP-15-CR-0003666-2017 (C.P. Chester); *see also* ECF No. 1 at 4 (acknowledging status as convicted and sentenced prisoner), *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (distinguishing standards for evaluating conditions-of-confinement claims brought by convicted and sentenced prisoners under the Eighth Amendment from those brought by pretrial detainees under the Fourteenth Amendment).

lead to "conditions of confinement [that are] dangerous, intolerable or shockingly substandard." *Gerber v. Sweeney*, 292 F. Supp. 2d 700, 706 (E.D. Pa. 2003) (citing *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)). As part of its analysis under this element, the Court must consider whether the prisoner had access to basic physical facilities, such as "plumbing, ventilation, and showers." *Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011). However, the Court must also consider factors such as the "frequency and duration" of any impaired access to these basic facilities, *see Thomas v. City of Philadelphia*, No. 21-CV-0441, 2021 WL 1614411, at *5 (E.D. Pa. Apr. 23, 2021) (citing *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)), and efforts undertaken to repair any broken facilities, *Gilblom*, 435 F. App'x at 168.

Under the second prong—deemed the "subjective" element—the prison official must have acted in a manner showing "deliberate[] indifferen[ce] to inmate health or safety." *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834 (alterations omitted)). "A prison official demonstrates deliberate indifference if he knows of and disregards an excessive risk to the inmate's health or safety." *Ham v. Greer*, 269 F. App'x 149, 151 (3d Cir. 2008) (citing *Farmer*, 511 U.S. at 834). Put differently, prison officials are deliberately indifferent when they "know[] that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (citation omitted). "[S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol*, 256 F.3d at 133 (citation omitted).

While Johnson's allegations are indeed unsettling, they are insufficient to state a claim to relief under the objective standards outlined above. Although Johnson asserts that the leaky toilet in his cell led to the accumulation of standing water that he had to clean up with another inmate's

assistance and caused the cell to smell like feces, he does not allege that human waste flooded his cell, or that he had any unprotected contact with it.  Even when taken as true, those allegations are not enough to satisfy the objective prong.  *Cf. Ridgeway v. Guyton*, 663 F. App'x 203, 205 (3d Cir. 2016) (affirming dismissal of prisoner's complaint even where the prisoner alleged that his toilet flooded the cell with feces and urine because it only happened on one occasion).  Moreover, it appears that Johnson was not denied access to a working toilet, as he had access to a restroom on his cell block, and the toilet was fixed within just a few days of Johnson filing his grievance.  *See* ECF No. 1 at 3–7.

Additionally, although Johnson alleges that the water in his cell was entirely shut off for a period of time, Johnson does not provide enough detail about this allegation to state a claim.  For example, it is unclear whether Johnson was ever denied all access to potable water.  It is also unclear how long the water was shut off in his cell.

However, Johnson has sufficiently alleged facts which, if taken as true, could establish the second, "subjective" prong as to Defendant Guthrie.  Johnson specifically alleges that Guthrie knew that the cell toilet did not work and leaked on the floor, but still placed Johnson in that cell. *Id.* at 3-4.  Johnson also alleges that Guthrie acted "malicious[ly]" by placing him in that cell.  *Id.* at 4.  Moreover, given Johnson's allegations that Guthrie was in charge of handling cell moves for prisoners, and that the cell was clearly "filthy," smelled like feces, and had been labeled as out of commission for weeks prior to Johnson's placement in it, *see id.* at 3-5, Johnson has sufficiently established that the excessive risk to his health was so obvious that Guthrie must have known of it before placing him in that cell.  Taken as true, these allegations indicate that Guthrie had a "sufficiently culpable" state of mind; that is, he acted with deliberate indifference to Johnson's

6

health when he placed Johnson in a cell where there was an excessive risk that Johnson may be exposed to human fecal matter and sewage.

### B.  Johnson fails to sufficiently identify defendants other than Guthrie.

In his Complaint, Johnson names Guthrie as a Defendant, but lists "et al." as Defendant No. 2 and makes numerous references to "others" and "higher ups" in his Complaint. *See, e.g.*, ECF No. 1 at 2, 4–5.  However, nowhere in his Complaint does Johnson identify who these "others" or "higher ups" are.  This type of pleading is insufficient to put these other unidentified defendants on notice of the conduct with which they are charged and does not state a plausible claim.  *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."); *Allen v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. CIV.A.03-CV-3497, 2004 WL 2830629, at *3 (E.D. Pa. Dec. 7, 2004) ("The designation of "et al" in a complaint's caption, without an identification of the proper parties in the body of the complaint, does not satisfy the Rule 10(a) identification requirement.").

To the extent that Johnson seeks to impart liability to "the higher ups" or "individual[s] involved that allowed the move [to the cell] to take place," ECF No. 1 at 5, he must identify them in any amended complaint he files.  Johnson must also allege their specific personal involvement in the events giving rise to his claims.  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that a plaintiff must allege how each defendant was personally involved in the events and the occurrences giving rise to the claims).

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Johnson leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court will grant Johnson leave to file an amended complaint.  The amended complaint must contain a caption listing each Defendant and identifying the Defendant by name.  Merely including "*et al.*" is not sufficient.  If a Defendant's name is unknown, the amended complaint must refer to that person as "John Doe No. X," with the "X" being replaced by a unique assigned number to distinguish that person from others, and that assigned number must be used consistently throughout the amended complaint to reference only that person.

The amended complaint must contain a short and plain statement of each claim showing that Johnson is entitled to relief against each Defendant.  Johnson must describe in the amended complaint how that Defendant acted personally to harm him.  The amended complaint must not refer collectively to "Defendants" or "others" in groups, but instead must state specifically which individual Defendant undertook what actions that allegedly violated Johnson's rights.  Finally, the amended complaint must contain a demand for the relief sought against each Defendant.  An appropriate Order, which provides further instruction about amendment, will be entered separately.[3]

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**

---

[3] Johnson's Motion for the Appointment of Counsel (ECF No. 2) is denied without prejudice to renewal after the Court conducts a statutory screening of any amended complaint Johnson may file.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).